Justin D. Kingsolver (AZ Bar No. 035476)
    JKingsolver@crowell.com
Meredith Manuel (AZ Bar No. 038381)*
    MeManuel@crowell.com
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington, DC 20004
Phone: (202) 624-2927
Facsimile: (202) 628-5116

*Application for Pro Hac Vice Admission
Forthcoming*

Attorneys for Plaintiff Alchera X, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alchera X, Inc., a Delaware corporation,<br><br>         Plaintiff,<br>v.<br><br>Jin Hong, an Arizona resident,<br><br>         Defendant. | Civil Action No.  _____<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

      Plaintiff Alchera X, Inc. ("Alchera X" or the "Company"), by and through the undersigned attorneys, brings this action against Defendant Jin Hong ("Hong" or "Defendant") for conversion, breach of fiduciary duty, breach of contract, fraudulent misrepresentation, constructive fraud, and unjust enrichment.  In support of these claims, Plaintiff alleges as follows:

### NATURE OF THE ACTION

      1.      Alchera X brings this action to recoup nearly $400,000 of company funds

1    that were wrongfully taken by Jin Hong, a terminated former employee and the
2    Defendant in this action.

3        2.    After rising to a position of leadership as Chief Operating Officer ("COO")
4    in the headquarters of Alchera X's parent company, Alchera, in the Republic of Korea,
5    Hong became the Chief Executive Officer ("CEO") for Alchera's U.S.-based subsidiary,
6    Alchera X. Although Alchera was based in Los Angeles, upon relocation to the United
7    States, Hong decided unilaterally to pursue a personal move for himself and his family
8    to Scottsdale, Arizona. Despite having no obligation to do so, and without any formal
9    agreement to do so, the Company supported him financially in this move.

10        3.    After moving to Arizona, Hong's performance declined rapidly. He did
11    not meet any sales objectives pertaining to accounts or sales. He did not work personally
12    with any of the key accounts, or with the Company's sales, marketing, and technology
13    staff. Hong's lack of direction, focus, and support cost the company over $1 million in
14    a single year.

15        4.    Hong's failure to adequately perform aside, he also engaged in serious
16    personal misconduct. He stole company funds by making unauthorized personal
17    purchases of approximately $23,000 to a Company credit card and withdrawing
18    $114,000 from a Company account with no authorization or proper purpose. Without
19    any authorization or authority to do so, Hong unilaterally awarded himself an additional
20    $14,585 per month, despite failing to meet the contractually-agreed-upon financial
21    targets that may have earned him an increase in salary. Hong further failed to repay a
22    Company loan of $225,000, in clear breach of a written agreement to do so.

23        5.    This misconduct and failed performance led to Hong's ultimate
24    termination in December of 2023.

25        6.    Although he had been terminated for cause, Hong continued to represent
26    himself as CEO of Alchera X and harassed employees of the Company, unfairly extorting
27    them in an effort to have them communicate Hong's threats to other employees in the
28    company.

7.    Hong's theft of Company funds has caused significant disruption to Alchera X's business, including payroll difficulties and risk of significant penalties under California law, where Alchera X's base of operations is located.

**JURISDICTION**

8.    There is complete diversity of citizenship between all Plaintiffs and all Defendants in this case.  The amount in dispute in this action, exclusive of interests and costs, exceeds the sum of $75,000.  As a result, this Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1332.

9.    This Court has general personal jurisdiction over Defendant because Defendant is a citizen and resident of the state of Arizona.

10.    This Court has specific personal jurisdiction over Defendant because the events giving rise to the claim occurred in the state of Arizona and because, on information and belief, all or substantially all of the wrongfully-taken Company property is now located in Arizona.

**VENUE**

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Accordingly, Defendant conducted and continues to conduct substantial actions in this District, a substantial part of the transactions at issue took place in this District, and Defendant's liability arose, in whole or in part, in this District.

**PARTIES**

12.    Plaintiff Alchera X is a corporation incorporated in Delaware with its principle place of business in California.  The Company's U.S. headquarters is in Los Angeles, California.  Alchera X's parent company, Alchera, is headquartered in Korea.

13.    Alchera X is a Visual Recognition AI Company specializing in identifying people's faces and other identifiable variables such as age and emotion.  Alchera is one of the top ten Facial Recognition companies in the world.  They have received awards

for their technology as well as for being the #1 provider of facial recognition security for the Korean banking system. Alchera is coordinating with Alchera X to expand their business and technology into the U.S. market and throughout the rest of the world.

14. Defendant is an individual who, since approximately July 29, 2023, has resided in Scottsdale, Arizona and is a citizen of Arizona.

15. Specifically, Defendant's roles at the Company included the International Business Division Director, Chief Operating Officer, and Chief Executive Officer of Alchera X. From March 1, 2022 until December 19, 2023, Defendant served as an officer of the Company.

## FACTUAL ALLEGATIONS

16. While CEO of the Company and living and working in Korea, Defendant decided to re-settle his family in Scottsdale, Arizona. The Company permitted this arrangement but did not agree to cover any associated expenses including but not limited to moving expenses, furniture expenses, or living expenses.

17. After relocating to Arizona, Defendant began to engage in a series of unprofessional conduct indicating that he was unfit for his position and that he lacked the personal and professional judgment to continue holding a position of trust with the Company.

18. Defendant failed to meet performance objectives, including his primary role of expanding global sales. Under the plain terms of Defendant's employment contract with the Company, expansion of global sales would be a prerequisite for any increase in pay. Hong also did not meet any sales objectives pertaining to accounts or sales and did not work personally with any of the key accounts, or with sales, marketing, and technology staff. Hong's lack of direction, focus, and support cost the company over $1 million in expenses in a single year.

19. Defendant's failing performance manifested in significant financial losses for the Company, including a $1 million operating loss. But his poor performance did not end there. His actions also required the company to pay over $80,000 plus legal fees

to settle a complaint with a marketing agency.  The Company also spent tens of thousands of dollars setting up a SOCKET SECURE (SOCKS) system for a potential customer that never materialized as a direct result of Defendant's actions.  In connection with this lost business opportunity, the Company also was required to add additional employees prematurely that were ultimately rendered unnecessary due to the loss of the anticipated workstream, at total costs of over $100,000.  And the company was unable to make adequate sales to compensate for business investment and operational costs.

20.     In addition to failing to meet performance objectives, Defendant engaged in a series of unauthorized personal withdrawals of Company funds.  Defendant charged over $23,000 in personal expenses to a Company credit card, withdrew $114,000 from a Company bank account without authorization, and awarded himself a $225,000 Company personal loan that would become due immediately upon termination according to loan documents.

21.     On October 30, 2023, Defendant withdrew $7,858.59 from a Company bank account without authorization.  On December 13, 2023, Defendant withdrew another $22,209.40 from a Company bank account without authorization.  On December 27, 2023, *eight days after Defendant was terminated for cause*, Defendant made another five unauthorized withdrawals from a Company bank account, totaling $84,144.07, in five separate transactions in the amounts of $144.07, $9,000.00, $25,000, $25,000, and $25,000.  Defendant did not have authorization for any of these withdrawals.  Records of these unauthorized withdrawals are attached hereto as **Exhibit A** to this Complaint.

22.     In 2023, Defendant charged over $23,000 of unauthorized, personal expenses to a Company credit card.  These charges included purchases such as $189.08 at Home Depot, $3,499.96 at Amazon, $18,009.43 at West Elm, $74.82 at Ikea, $155.67 at Target, $211.31 at Cave Creek Outfitters, $225.76 at HomeGoods, $158.82 at Wayfair, $60.02 at Nike, $10.79 at Best Buy, and $602.96 at Walmart unrelated to company business.  Records of these unauthorized transactions are attached hereto as **Exhibit B** to this Complaint.

23.     In August 2023, Defendant unlawfully awarded himself a raise of approximately $14,585 per month, bringing his monthly salary from $22,916 to $37,500 and his annual salary from $275,000 to $450,000.  This raise represented a 63% increase in Defendant's salary, which was entirely unearned and unauthorized.  Records of this unauthorized raise are attached hereto as **Exhibit C** to this Complaint.

24.     On December 19, 2023, Defendant was terminated for cause.

25.     The reasons for Defendant's termination included embezzlement of Company funds, lack of fiduciary responsibility, unauthorized purchases, and for failure to meet performance objectives, including expansion of global sales.

26.     Since Defendant's termination, Defendant has threatened Company employees, falsely held out himself as the current CEO of Alchera X, and deliberately attempted to interfere with Company business.

27.     Following his termination, Defendant intentionally misrepresented himself as the current CEO of Alchera X to several Company employees, intending those employees to rely on this false display of authority.  While falsely representing himself as CEO of Alchera X, in order to harm the company in retaliation for his termination, Defendant directed employees to cease business at Defendant's orders or face legal retribution.

28.     For example, more than ten days after Defendant's termination, Defendant directed an Alchera X employee, Catherine Coan, his former Chief of Staff, to direct all Alchera X employees to cease "all sales, operations, and communications at AX" or else risk "corporate and personal legal action" from Defendant.  Following Defendant's orders, Ms. Coan sent an email to all relevant Company employees stating the same.

29.     As a result of Defendant's actions, including his theft of hundreds of thousands of dollars in Company funds, the Company's payroll was nearly compromised.

30.     Defendant also made harassing calls to several Company employees, including Steve Monnier, conveying substantively the same messages contained in Defendant's communications with Ms. Coan.  The abusive communications caused

significant distress to employees and disruption to the Company's business.

31.     As a result of Defendant's theft of Company funds, the Company was forced to operate with *ZERO* funds in its account.  It took almost two weeks to secure additional funding from the parent company—and the parent company hesitated to send over any additional funding specifically because Defendant still had access to the bank accounts, and all stakeholders reasonably feared that Defendant's theft would continue.

32.     As a result of Defendant's theft, and to prevent further theft from Defendant, the Company was also required to work with several banks in the United States in order to make the transition to a new account.  During this time, the Company was placed on a credit hold because of Defendant's theft of funds.

33.     The Company also began to receive a number of calls from vendors that could not be or had not been paid as a direct result of Defendant's actions and failed supervision.  This severely disrupted the Company's operations, forcing the current CEO to spend hours of time calling and traveling (at the cost of several thousand dollars) to key banks to resolve the issues and to expend significant time repairing relationships with important vendors.

34.     The theft also impacted the company's relationship with KOTRA, Korean investment authority and important business relationship the Company maintains.  While Defendant continued to make false representations about his status as the CEO after he had been terminated, the Company engaged in several visits to and communications with KOTRA clarify the current leadership status at the Company.

35.     In addition, when several of Alchera's key accounts had heard about Defendant's theft and termination, that news created another cascade of concerns regarding the future of the Company, its staff, and its ability to operate to support a number of accounts.  While these issues were resolved over a period of months (after a significant investment of time from the Company's remaining employees, including its new CEO), the Company's financial status, reputation, and current and prospective business relationships were all put at risk as a result of Defendant's actions.

36.     Also as a result of Defendant's actions and their financial ramifications on the Company, including significant amounts of lost revenue, the Company has been forced to terminate several employees.  The Company continues to experience residual fallout from Defendant's poor leadership, failure to execute on his assigned goals, and his theft of Company funds.  The Company continues to expend significant resources to work towards creating a stable team that can continue to move forward for the future development of the Company, which operates in a dynamic and hypercompetitive industry.

37.     As of this filing, Defendant has also failed to repay a $225,000 Company personal loan that became due immediately upon termination according to loan documents.  These documents are attached hereto as **Exhibit D** to this Complaint.

**COUNT ONE**

**Conversion: $23,000 In Unauthorized Company Credit Card Charges**

38.     Plaintiff realleges and incorporates by reference its allegations in Paragraphs 1 through 37.

39.     As an officer of the Company, Defendant was granted access to all finances/accounts/funds of the Company.

40.     By committing the acts described above, Defendant wrongfully exerted control and dominion over Company property (funds) inconsistent with his rights and deprived the Company, the other Officers/Directors, and/or the Shareholders of their rights, properties, and/or monies.

41.     Defendant's acts cannot be excused by care, good faith, or lack of knowledge.

42.     As described above, Defendant unlawfully took Company funds without prior authorization to do so, which is required for all expenditures of Company funds per Company policies.  Specifically, Defendant charged over $23,000 in personal expenses to a Company credit card.

43.     Defendant used Company funds for personal purchases, which he knew

was not permitted or authorized.

44.     As a result of Defendant's unlawful conversion of Company funds, the Company was deprived of operating funds and experienced payroll difficulties.

45.     Defendant's actions have caused damages to the Company, its shareholders, and the other Officers/Directors in an amount to be proven at trial but, in no event, less than the $75,000 amount necessary to establish diversity jurisdiction.

46.     Even if Defendant were to return the wrongfully-obtained property or otherwise repay his theft/conversion, the return of money would not nullify his acts.

47.     In addition, and because of the intentional nature of this claim, Defendant may be liable for punitive or exemplary damages and/or subject to disgorgement of his shareholder, officer and director positions.

**COUNT TWO**

**Conversion: $114,000 in Unauthorized Withdrawals from Company Bank Account**

48.     Plaintiff realleges and incorporates by reference its allegations in Paragraphs 1 through 47.

49.     As an officer of the Company, Defendant was granted access to all finances/accounts/funds of the Company.

50.     By committing the acts described above, Defendant wrongfully exerted control and dominion over Company property (funds) inconsistent with his rights and deprived the Company, the other Officers/Directors, and/or the Shareholders of their rights, properties, and/or monies.

51.     Defendant's acts cannot be excused by care, good faith, or lack of knowledge.

52.     As described above, Defendant withdrew a total of $114,000 from a Company bank account without authorization.

53.     On October 30, 2023, Defendant withdrew $7,858.59 from a Company bank account without authorization.  On December 13, 2023, Defendant withdrew

$22,209.40 from a Company bank account without authorization. On December 27, 2023, Defendant withdrew $144.07, $9,000.00, $25,000, $25,000, and $25,000 from a Company bank account in separate transactions without authorization.

54.     Defendant used Company funds for personal purchases, which he knew was not permitted or authorized.

55.     As a result of Defendant's unlawful conversion of Company funds, the Company was deprived of operating funds and experienced payroll difficulties.

56.     Defendant's actions have caused damages to the Company, its shareholders, and the other Officers/Directors in an amount to be proven at trial but, in no event, less than the $75,000 amount necessary to establish diversity jurisdiction.

57.     Even if Defendant were to return the wrongfully-obtained property or otherwise repay his theft/conversion, the return of money would not nullify his acts.

58.     In addition, and because of the intentional nature of this claim, Defendant may be liable for punitive or exemplary damages and/or subject to disgorgement of his shareholder, officer and director positions.

## COUNT THREE

### Conversion: Unauthorized Raise Totaling $43,755

59.     Plaintiff realleges and incorporates by reference its allegations in Paragraphs 1 through 58.

60.     As an officer of the Company, Defendant was granted access to all finances/accounts/funds of the Company.

61.     By committing the acts described above, Defendant wrongfully exerted control and dominion over Company property (funds) inconsistent with his rights and deprived the Company, the other Officers/Directors, and/or the Shareholders of their rights, properties, and/or monies.

62.     Defendant's acts cannot be excused by care, good faith, or lack of knowledge.

63.     Defendant awarded himself a raise of approximately $14,585 per month

without authorization for approximately three months, totaling $43,755.

64.    Defendant used these Company funds for personal reasons, which he knew was not permitted or authorized.

65.    As a result of Defendant's unlawful conversion of Company funds, the Company was deprived of operating funds and experienced payroll difficulties.

66.    Defendant's actions have caused damages to the Company, its stakeholders, and the other Officers/Directors in an amount to be proven at trial but, in no event, less than the $75,000 amount necessary to establish diversity jurisdiction.

67.    Even if Defendant were to return the wrongfully-obtained property or otherwise repay his theft/conversion, the return of money would not nullify his acts.

68.    In addition, and because of the intentional nature of this claim, Hong is liable for punitive or exemplary damages and/or subject to disgorgement of his shares in the Company and well as his officer and director positions.

## COUNT FOUR

### Breach of Fiduciary Duty

69.    Plaintiff realleges and incorporates by reference its allegations in Paragraphs 1 through 68.

70.    As an officer of the Company, Defendant owed a fiduciary duty to the Company and his fellow Officers/Directors to act in the interest of the Company, putting aside his own personal gain.

71.    By taking the actions described above, Defendant breached his fiduciary duty to the Company by, at least: failing to meet performance objectives, unlawfully converting Company funds for personal use without authorization, depriving the Company of operating funds, and directing employees to act contrary to the best interests of the Company.

72.    Defendant committed such egregious acts that he could not be excused by the "Business Judgment Rule" or any similar rule of construction that would allow him to take such actions.

73.    Defendant's actions have caused damages to the Company, its shareholders, and the other Officers/Directors in an amount to be proven at trial but, in no event, less than the $75,000 amount necessary to establish diversity jurisdiction.

74.    In addition, and because of the intentional nature of this claim, Defendant may be liable for punitive or exemplary damages and/or subject to disgorgement of his shareholder, officer and director positions.

## COUNT FIVE

**Breach of Contract: Failure to Repay Intentionally- or Negligently-Caused Damages and/or Losses**

75.    Plaintiff realleges and incorporates by reference its allegations in Paragraphs 1 through 74.

76.    Defendant's employment with the Company was governed by an employment agreement executed on March 1, 2022.

77.    This contract provides, *inter alia*, that "in the event where Employee intentionally or negligently causes damages or losses to the Company during or after the Term of this Agreement, Employee shall compensate the Company for such damages or losses suffered."

78.    Pursuant to this contract, Defendant has failed to compensate the Company for damages and losses associated with his unlawful conversion of Company funds for personal use.  This represents a breach of the contractual provision described in the preceding paragraph.

## COUNT SEVEN

**Fraudulent Misrepresentation**

79.    Plaintiff realleges and incorporates by reference its allegations in Paragraphs 1 through 78.

80.    Defendant provided false information, namely that, following his termination from the Company, he was still holding the title of CEO of the Company.

81.    At the time Defendant made this representation, Defendant intended

employees of the Company, agents of the Company, and others to rely on this information or knew they reasonably would rely.

82.    While falsely holding himself out to be the current CEO of the Company, when he had been terminated, Defendant deliberately attempted to interfere with Company business by directing that all pipelines, operations, employee contracts, and communications at the Company fall under his authority and directing that all sales, operations, and communications within the company, including between the Company, Alchera X, and its parent company, Alchera, in Korea, cease immediately.  In connection with these directions, Defendant threatened legal action if employees did not comply.

83.    Defendant also directed the Company to direct all financial operations through Defendant, including payroll.

84.    In communicating the above, Defendant failed to exercise reasonable care.

85.    The Company, employees of the Company, and others relied on this incorrect information to their detriment, namely causing hundreds of thousands of dollars in loss of operating expenses for the Company and the Company nearly missing payroll.

86.    These actions constitute fraudulent misrepresentation.

## COUNT EIGHT

### Unjust Enrichment

87.    Plaintiff realleges and incorporates by reference its allegations in Paragraphs 1 through 86.

88.    Defendant received benefits, both financial and intangible, from Plaintiff and Plaintiff's work.  Defendant has retained benefits far in excess of what was expected that he would receive or be compensated, and it would be inequitable for Defendant to retain the full value of the benefits he took/received.

89.    Defendant's unlawful conversion of Company funds resulted in Defendant's personal enrichment at the detriment of the Company.

90.    Even if no other claim is proved, Plaintiff may recover on a quantum meruit basis for the value of the benefits/monies that Defendant has inequitably retained.

91.     Defendant converted these funds for personal use in the absence of any justification or authorization from the Company.

92.     Plaintiff will prove the amount of damage (or quantum meruit recovery) at trial, but the amount should, in no event, be less than the statutory minimum for diversity jurisdiction in this forum.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Honorable Court:

1.     Enter judgment on behalf of Plaintiff that Defendant's actions were unlawful;

2.     Award Plaintiff actual damages equal to the amount of funds wrongfully taken by Defendant: $358,465;

3.     Award Plaintiff compensatory, consequential, incidental, and/or equitable damages (including, but not limited to, a disgorgement of benefits under an unjust enrichment theory or quantum meruit measure of damages) in amounts to be proven at trial (but in no event less than the statutory minimum for diversity jurisdiction);

4.     Award Plaintiff exemplary or punitive damages as deemed appropriate;

5.     Award Plaintiff attorneys' fees and costs arising under A.R.S. § 12–341.01, A.R.S. § 25-324, and any and all other applicable bases;

6.     Award Plaintiff further legal and equitable relief as this Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff hereby respectfully demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED this 23rd day of August, 2024.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

_____
Justin Kingsolver, AZ Bar # 035476
Meredith Manuel, AZ Bar # 038381*
Crowell & Moring LLP
1001 Pennsylvania Ave. NW
Washington, DC 20004
Phone: 202-624-2927
Email: JKingsolver@crowell.com

*Counsel for Plaintiff Alchera X, Inc.*

* Pro Hac Vice Application Forthcoming

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 22, 2024, I caused the foregoing Complaint to be electronically filed with the Clerk of the Court using the Court's e-filing system and that I served a copy of the foregoing Complaint upon counsel for Defendant.

*/s/ Justin D. Kingsolver*

Justin D. Kingsolver
*Attorney for Alchera X, Inc.*