**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alchera X Incorporated,<br><br>            Plaintiff,<br><br>v.<br><br>Jin Hong,<br><br>            Defendant. | No. CV-24-02166-PHX-SHD<br><br>**ORDER** |
| Jin Hong,<br><br>            Counterclaimant,<br><br>v.<br><br>Alchera X Incorporated,<br><br>            Counterdefendant. | No. CV-24-02166-PHX-SHD<br><br>**ORDER** |
| Jin Hong, an Arizona resident,<br><br>            Third-Party Plaintiff,<br><br>v.<br><br>Alchera Inc., a South Korean corporation<br><br>            Third-Party Defendant. | |

Pending before the Court are Plaintiff Alchera X Incorporated's ("Alchera X") motion to dismiss Defendant/Counterclaimant/Third-Party Plaintiff Jin Hong's counterclaims and Third-Party Defendant Alchera Inc.'s ("Alchera") motion to dismiss

Hong's Third Party Complaint. For the reasons stated below, both motions will be granted.[1]

## I. BACKGROUND[2]

Jin Hong began working for Alchera as its International Business Division Director in March 2022. (Doc. 15 at ¶ 5; Doc. 15-1.) His employment was governed by three Employment Agreements (the "Agreements"), each signed and executed on March 1, 2022 and between Hong on the one hand and Alchera on the other. (Doc. 15-1 at 2–10.) The three agreements cover different two-year terms of employment but are otherwise identical. (*Id.*) The first employment term runs from March 1, 2022, to February 28, 2024, (*Id.* at 2–4); the second from March 1, 2024, to February 28, 2026, (*Id.* at 5–7); and the third from March 1, 2026, to February 28, 2028, (*Id.* at 8–10).

Article 3 of the Agreements provides that Hong may "resign[] voluntarily during the Term" in which case, the Agreement "terminate[s] as of the day of the resignation." (*See e.g.*, *id.* at 2.) Article 3 also specifies that "[u]nless the Company asks the Employee renew [sic] this Agreement by the end of the Term," each Agreement "shall automatically renew on the last day of the Term." (*Id.*) Under Article 5 of the Agreements, Hong was to be paid "275,000 [dollars] before tax with a compounded interest of 25% increase per year." (*Id.*) The Agreements dictate that Hong's salary would be paid in 12 installments on the last day of each month. (*Id.*) But "if [the] Agreement is terminated before the expiration of the Term, the remuneration after the termination date shall be paid within one month of the termination date." (*Id.*) Article 8 of the Agreements provides that "[a]ny disputes that cannot be resolved between the parties shall be submitted to the exclusive jurisdiction of the Seoul Central District Court." (*Id.* at 3.)

Initially, Hong worked for Alchera in South Korea. (Doc. 15 at ¶1.) But "at the

---

[1] Hong's request for oral argument (Docs. 20, 61), is denied because the issues are fully briefed, and oral argument would not aid the Court's decision process. *See* LRCiv 7.2(f).

[2] The following facts are derived from Hong's Counterclaim and Third Party Complaint. *See National Credit Union Admin. v. Shel-Tec Ltd., LLC*, 2013 WL 4231016, at *1 (D. Ariz. 2013) ("For the purpose of deciding [a] motion to dismiss [a] counterclaim, the Court assumes the facts pled in the counterclaim to be true.").

- 2 -

behest of Alchera," he and his family moved to the United States and "settled in Scottsdale, Arizona to operate Alchera's US facing company, Alchera X." (*Id.* at ¶12.) Hong alleges that he is "the 100% sole owner of Alchera X," and owns "8,000,000 shares of common stock" in Alchera X issued to him by Alchera X's Board of Directors without "any restrictions, nor any vesting period." (*Id.* at ¶¶ 17, 18; *see also* Doc. 15-1 at 12.)

Sometime during his employment with Alchera, Hong "began noticing inappropriate conduct" between Alchera's CEO, Young Kyu Hwang, "and female employees." (*Id.* at ¶19.) Hong's relationship with Hwang "began to sour" when Hong confronted Hwang "about his inappropriate behavior," and reprimanded a female employee to whom Hwang gave preferential treatment. (*Id.* at ¶ 21.)

In November 2023, Hong was not paid his monthly salary. (*Id.* at ¶ 22.) On December 5, 2023, Alchera requested that Hong "resign from the Board of Directors [of Alchera X] in exchange for a new independent contractor agreement where he would receive an annual salary of $300,000.00." (*Id.* at ¶ 23; *see also* Doc. 15-1 at 14.) Two weeks later, on December 19, Hong made an emergency trip to South Korea to take care of his father, who was ill. (Doc. 15 at ¶ 25.) That day, Hwang called Hong and "demand[ed]" that Hong resign from the Board of Directors of Alchera X. (*Id.* at ¶¶ 26, 27.) In the spirit of cooperation, and "based upon the[] statements that he would receive an independent contractor agreement," Hong complied with the request and resigned. (*Id.* at ¶ 27.) Hong alleges that "he never resigned from his employment with Alchera," and did not "forfeit[] his ownership interest in Alchera X." (*Id.* at ¶¶ 13, 27.)

On December 26, 2023, Hong asked Alchera "about the new independent contractor agreement he was promised in return for resigning from the Board of Directors." (*Id.* at ¶ 28.) The next day, he was "logged out of his company email without notice." (*Id.* at ¶ 29.) Hong was not paid the monthly installments of his salary in December 2023, January 2024, or February 2024. (*Id.* at ¶ 22, 31.) On February 29, 2024, Hong received an email terminating his employment with Alchera Inc. (*Id.* at ¶ 30; *see also* Doc. 15-1 at 16.)

Six months later, in August 2024, Alchera X filed this action against Hong, seeking

relief for, among other claims, breach of fiduciary duty, breach of contract, and fraudulent misrepresentation. (Doc. 1 at 8–14.) In October 2024, Hong answered the complaint, raising two counterclaims against Alchera X for breach of contract, and breach of the implied covenant of good faith and fair dealing. (Doc. 7.) Alchera X moved to dismiss the counterclaims, (Doc. 10), and on December 13, 2024, Hong filed an amended Answer, (Doc. 15). Hong's amended answer added Alchera as a Third Party Defendant and asserted claims for breach of contract (Count 1); breach of the implied covenant of good faith and fair dealing (Count 2); unpaid wages under the Arizona Wages Act ("AWA"), (Count Three); unjust enrichment, (Count Four); fraud, (Count Five); negligent misrepresentation, (Count Six); and conversion, (Count Seven). (Doc. 15 at 17–21.) All seven claims were brought against Alchera. (*See* Doc. 15 at 11–21.) Only three claims—the bad faith, unpaid wages, and unjust enrichment claims—were also asserted as counterclaims against Alchera X.

Alchera X moved to dismiss the counterclaims asserted against it. (Doc. 18.) After being served, (Doc. 40), Alchera moved to dismiss Hong's Third Party Complaint on August 1, 2025, arguing that Hong's claims were barred by the Agreements' forum selection clause, and, in the alternative, failed to state a claim. (Doc. 55.) Both motions to dismiss are fully briefed. (Docs. 20, 28, 61, 69.)

In response to Alchera's motion to dismiss, Hong stated that "Alchera X is not a party to the Employment Agreement," and that "[t]he only parties to the Employment Agreement are Mr. Hong and [Alchera]." (Doc. 61 at 7.) The Court ordered supplemental briefing on the effect, if any, of these statements on Hong's counterclaims against Alchera X. (Doc. 79.) The parties submitted simultaneous supplemental briefing on December 17, 2025. (Docs. 80, 81.)

## II. DISCUSSION

### A. Alchera X's Motion to Dismiss Hong's Counterclaims

#### 1. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true" and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, the Court does not accept legal conclusions as true, nor does the Court consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (alteration in original) (quotation marks omitted)). That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "well-pleaded complaint may proceed even if . . . actual proof of those facts is improbable, and . . . a recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## 2. Good Faith and Fair Dealing Claim

In Arizona, "every contract, including employment contracts, contains an implied-in-law covenant of good faith and fair dealing." *Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1384 (Ariz. App. 1994). The covenant "protects the right of the parties . . . to receive the benefits of the agreement that they have entered." *Wagonseller v. Scottsdale Mem. Hosp.*, 710 P.2d 1025, 1040 (Ariz. 1985). As a result, whether the covenant was breached will always turn on "the contract itself." *Id.* Without a contract, a plaintiff cannot maintain a claim for breach of the covenant. *Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 960 (D. Ariz. 2020) ("A claim for breach of the duty of good faith and fair dealing requires a contractual relationship.").

In Hong's Supplemental Response, Hong clarifies that his covenant of good faith and fair dealing claim against Alchera X arises not from the Agreements, but from Alchera X's "fraudulent transfer of his ownership shares to Alchera." (Doc. 81 at 2.) This argument is untenable because it contradicts Hong's previous briefing in which he made clear that his "breach of implied covenant of good faith and fair dealing claim rests on the failure to

- 5 -

receive his guaranteed salary and annual increase *as set out in the Agreement*.". (Doc. 20 at 5 (emphasis added).) And in any event, while Hong's Answer and Response do mention that he lost ownership of Alchera X, (*see e.g.*, Doc. 15 at ¶ 42 ("[T]he breach by Alchera X . . . resulted in" the denial of "his 100% sole ownership of Alchera X")), Hong fails to identify any contract between Alchera X and Hong that would support a bad faith claim.

Hong may be relying on Young Kyu Hwang's promise to give him a new independent contractor agreement in exchange for his resignation from Alchera X's Board of Directors to establish an underlying contract. (*See* Doc. 20 at 4.) Even so, it is unclear how a promise from Alchera's CEO to Hong constitutes a contract between Alchera X and Hong. Because Hong has failed to identify a contract to support his covenant claim—and further failed to support his conclusory assertions with factual allegations—this claim will be dismissed with leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quotation marks omitted)).

### 3. Arizona Wage Act Claim

The Arizona Wage Act requires employers to timely pay employees all wages they are owed. Ariz. Rev. Stat. § 23-351 (requiring employers to pay employees at least twice a month); *id.* at § 23-353 (requiring employers to pay an employee "discharged from service" all wages due "within seven working days" or by the end of the pay period). The AWA defines wages as "nondiscretionary compensation due an employee in return for labor or services rendered . . . for which the employee has a reasonable expectation to be paid." *Id.* at § 23-350(7). An employer who "fails to pay wages due" as outlined by the statute, may be liable for "treble the amount of the unpaid wages." *Id.* at § 23-355.

The AWA permits employees to recover against their employers, *id.*, and defines an employee as "any person who performs services for an employer under a contract of employment," *id.* at § 23-350. As discussed above, Hong has conceded that Alchera X is not a party to his employment agreements with Alchera. Without a contractual

relationship, Hong cannot recover from Alchera X under the AWA.

In his supplemental briefing, Hong asserts that "newly discovered evidence" demonstrates that Alchera X and Alchera are so intertwined that the alter-ego theory applies here. (Doc. 81 at 3–4 (citing *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991) for the proposition that "a parent-subsidiaries [sic] relationship will be pierced when a corporation's separateness has effectively ceased, and injustice would result from maintaining the corporate distinction").)[3]  This is the first time Hong has raised this argument. (*See* Docs. 20, 61.) Hong's Complaint does not contain sufficient factual allegations to analyze whether the entities are, in fact, one and the same or should be treated as such. (Doc. 15 at ¶ 13 (alleging only that Alchera X is Alchera's "US facing company," and that the companies should be held "jointly and severally liable" because they have the same "corporate leaders").)[4]  Hong's AWA claim will therefore be dismissed with leave to amend. *See Lopez*, 203 F.3d at 1127.

### 4. Unjust Enrichment Claim

Alchera X initially argued that Hong's unjust enrichment claim is improper because "the existence of a contract specifically governing the rights and obligations of each party precludes recovery for unjust enrichment." (Doc. 18 at 7 (quoting *Physicians Surgery Ctr. of Chandler v. Cigna Healthcare Inc.*, 609 F. Supp. 3d 930, 939 (D. Ariz. 2022)). But, as Hong pointed out, a plaintiff may bring an unjust enrichment claim in the alternative, "subject to single recovery, where he would have no other remedy to recover payment for services rendered if the contract was found invalid." *Summers v. Gloor*, 368 P.3d 930, 934

---

[3] Given Hong's ongoing litigation against Alchera in South Korea, (Doc. 55 at 8), it may be difficult for him to establish that "observance of the corporate form would sanction a fraud or promote injustice." *Gatecliff*, 821 P.2d at 728.

[4] Hong attached several exhibits to his supplemental briefing and references an impending motion for summary judgment to support his claims that the alter-ego theory applies. (Doc. 81 at 3.) Hong did not request that the Court take judicial notice of Hong's additional evidence, and the Court declines to do so. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (except in limited circumstances, courts may not consider evidence outside the pleadings when reviewing a motion to dismiss without turning the motion into a motion for summary judgment).

(Ariz. Ct. App. 2016) (citing *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045–46 (D. Ariz. 2000)). In its reply, Alchera X does not dispute that Hong may plead unjust enrichment in the alternative, and thus, has abandoned any argument to the contrary. (Doc. 28 at 6–7.) Regardless, the parties' supplemental briefing confirms that the Agreements do not "govern[] the rights and obligations of" Alchera X and Hong, and absent a contract, Hong's unjust enrichment claims are appropriate. *Summers*, 368 P.3d at 934 ("The parties' relationship . . . was therefore not governed by any contract, and [the plaintiff] was entitled to seek equitable relief.").

Alchera X next argues that Hong has failed to allege facts supporting an unjust enrichment claim, specifically that (1) Hong conferred a benefit upon Alchera X, (2) at Hong's own expense, and (3) that it would be unjust to allow Alchera X to keep the benefit. (Doc. 18 at 7–8.); *see also USLife Title Co. of Arizona v. Gutkin*, 732 P.2d 579, 584 (Ariz. Ct. App. 1986) ("It is the well established law of Arizona that in order to prevail upon a theory of unjust enrichment, a plaintiff must establish that, (1) plaintiff conferred a benefit upon the defendant; (2) defendant's benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the benefit."). Hong alleges that he worked for Alchera until the end of February 2024 that he "was an exemplary employee and leader of Alchera,"; that he "directly contributed to the increased profits and advancement of Alchera," and that he was not paid for at least three months. (Doc. 15 at ¶¶ 15, 69.) Hong makes no allegations, however, that he conferred a benefit on Alchera X, (*see* Doc. 15), nor does he make any argument to that end, (*see* Doc. 20 at 7–8). Thus, while Hong may have sufficiently alleged a claim of unjust enrichment against Alchera, he has not done so against Alchera X. This claim will also be dismissed with leave to amend. *See Lopez*, 203 F.3d at 1127.

### B. Alchera's Motion to Dismiss Hong's Third Party Complaint

#### 1. Legal Standard

"[T]he appropriate way to enforce a forum-selection clause pointing to a foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Conts. Co. v. U.S.*

*Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Alchera does not clarify that, in seeking to enforce the forum selection clause, it seeks relief through the doctrine of forum non conveniens. (*See* Doc. 55 at 7–9.) But the forum-selection clause at issue "point[s] to a foreign forum"—South Korea—so analysis through forum non conveniens is appropriate. (Doc. 15-1 at 3.) When considering such a motion "'courts must enforce a forum-selection clause unless the contractually selected forum affords the plaintiffs no remedy whatsoever.'" *Aquaquim SA de CV v. Environmental Fluids Inc.*, 667 F. Supp. 3d 1003, 1010 (D. Ariz. 2023) (quoting *Yei A. Sun v. Adv. China Healthcare, Inc.*, 901 F.3d 1081, 1084 (9th Cir. 2018)).

### 2. Forum Selection Clause

"Forum selection clauses are presumed valid and should be enforced unless doing so clearly would be unreasonable and unjust, or the clause [is] invalid for such reasons as fraud or overreaching." *Aquaquim*, 667 F. Supp. 3d at 1007 (cleaned up). The party violating the forum selection clause bears a "heavy burden to show why the court should not enforce the forum selection clause." *Id.* (cleaned up).

The Agreements contain a forum selection clause, which states that "[a]ny disputes that cannot be resolved between the parties shall be submitted to the exclusive jurisdiction of the Seoul Central District Court." (Doc. 15-1 at 3.) Alchera argues that the Court should enforce the forum selection clause and dismiss Hong's Third Party Complaint against Alchera in its entirety. (Doc. 55 at 7–9.) In response, Hong does not address the validity of the forum selection clause; indeed, he does not mention the forum selection clause at all. (Doc. 61 at 5–17.) Hong has thus waived any argument that the forum selection clause is invalid. *Zargosky-Beaudoin v. Rhino Enter. Co.*, 2019 WL 5960084, *5 (D. Ariz. 2019) ("Typically, when a party fails to respond to an argument in a motion to dismiss, opposition to the argument is deemed waived."); *Unimax Comm. LLC v. T-Mobile US, Inc.*, 2025 WL 3090751, *1 (9th Cir. 2025) ("Unimax waived its unconscionability argument by failing to substantively address unconscionability in its opposition to the motion to dismiss.").

Further, the arguments Hong does raise do not overcome his failure to address the

forum selection clause.  Hong argues only that duplicative litigation in foreign forums is permitted, and that Alchera is an indispensable party to the instant dispute because Alchera X has brought a breach of contract claim against him. (Doc. 61 at 5–7.)  But Alchera X has since dismissed its breach of contract claim, rendering Hong's indispensable party argument moot. (*See* Doc. 70.)  And whether duplicative litigation is generally permitted does not bear on the question presented here, which is whether Hong and Alchera's *contracts*—the Agreements—permit litigation in any forum other than South Korea. "Well-established judicial policy favors the enforcement of forum selection clauses as representations of the parties' bargaining and mutual expectations," *Aquaquim*, 667 F. Supp. 3d at 1007, and Hong presents no argument that the forum selection clause is invalid. The Court will enforce the agreed-upon forum selection clause and dismiss Hong's Third Party Complaint against Alchera.

Accordingly,

**IT IS ORDERED** granting Alchera X's motion to dismiss (Doc. 18).  Hong's counterclaims for breach of the implied covenant of good faith and fair dealing (Count 2), unpaid wages under the AWA (Count 3), and unjust enrichment (Count 4) are dismissed with leave to amend.

**IT IS FURTHER ORDERED** granting Alchera's motion to dismiss, (Doc. 55), without prejudice to Hong bringing these claims in the proper forum.

**IT IS FURTHER ORDERED** that any amended Answer and Counterclaim shall be filed no later than **January 6, 2026**.

Dated this 23rd day of December, 2025.

Honorable Sharad H. Desai
United States District Judge