**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Alchera X Incorporated,<br>Plaintiff,<br>v.<br>Jin Hong,<br>Defendant. | No. CV-24-02166-PHX-SHD<br>**ORDER** |
| Jin Hong,<br>Counterclaimant,<br>v.<br>Alchera X Incorporated,<br>Counterdefendant. | No. CV-24-02166-PHX-SHD<br>**ORDER** |
| Jin Hong, an Arizona resident,<br>Third-Party Plaintiff,<br>v.<br>Alchera Inc., a South Korean corporation<br>Third-Party Defendant. | |

On January 20, 2026, Plaintiff/Counter Defendant Alchera X, Inc. ("Alchera X") and Third-Party Defendant Alchera, Inc. ("Alchera") moved to dismiss Defendant/Counter

Claimant/Third-Party Plaintiff Jin Hong's Second Amended Counterclaims and First Amended Third-Party Complaint. (Doc. 86.) The motion to dismiss is fully briefed.[1] (Docs. 86, 91, 93.) For the reasons stated below, the motion will be **granted in part** and **denied in part**.[2]

## I. BACKGROUND

I summarized the facts underlying this dispute in my December 23, 2025 Order ("December 2025 Order") granting Alchera X and Alchera's first motions to dismiss. (Doc. 82.) Relevant here, Hong began working for Alchera as its International Business Division Director and Chief Operating Officer in March 2022. (*Id.* at 2; Doc. 83 at ¶¶ 6–7.)[3] His employment was governed by three materially identical Employment Agreements (the "Employment Agreements"), each signed and executed on March 1, 2022, and covering Hong's employment through February 28, 2028. (Doc. 82 at 2; Doc. 83 at ¶ 9.) The Employment Agreements set Hong's salary, to be paid monthly, and contained a forum selection clause providing that "[a]ny disputes that cannot be resolved between the parties shall be submitted to the exclusive jurisdiction of the Seoul Central District Court." (Doc. 82 at 2; Doc. 83 at ¶ 46.) Alchera X was not a party to the Employment Agreements. (Doc. 82 at 4.)

In 2023, Hong relocated with his family to Scottsdale, Arizona, to operate Alchera's "US facing company": Alchera X. (*Id.* at 3; Doc. 83 at ¶ 15.) Hong alleges that, at the time, he was the 100% owner of Alchera X via the issuance of 8,000,000 shares of common

---

[1] In his Response, Hong asserts that Plaintiffs did not meet and confer as required by Local Rule 12.1(c) and requests I summarily deny their motion accordingly. (Doc. 91 at 2 n.1.) In Reply, Plaintiffs submitted a declaration and evidence that they complied with the meet and confer process. (Doc. 93-1.) I find that Plaintiffs complied with Local Rule 12.1(c), and decline to deny their motion on this ground.

[2] I find this motion suitable for decision without oral argument. *See* LRCiv 7.2(f).

[3] Hong's Answer, Counterclaim, and Third-Party Complaint are all filed at Doc. 83. The paragraph numbers cited throughout reference those associated with his Counterclaim and Third-Party Complaint, not his Answer.

stock by Alchera X's Board of Directors. (Doc. 82 at 3; Doc. 83 at ¶¶ 85, 89.) After Hong confronted Alchera's CEO, Young Kyu Hwang, about alleged inappropriate conduct toward female employees, their relationship soured. (Doc. 82 at 3; Doc. 83 at ¶¶ 19–24.) Alchera stopped paying Hong's salary in November 2023. (*Id.*) In December 2023, Alchera asked Hong to resign from Alchera X's Board of Directors in exchange for an independent-contractor arrangement. (Doc. 82 at 3; Doc. 83 at ¶ 25.) Hong resigned two weeks later. (*Id.*) Alchera did not offer him an independent contractor arrangement and terminated his employment on February 29, 2024. (Doc. 82 at 3; Doc. 83 at ¶¶ 30–32.)

Six months later, in August 2024, Alchera X filed this action against Hong asserting claims including breach of fiduciary duty, breach of contract, and fraudulent misrepresentation. (Doc. 1 at 8–14.) In October 2024, Hong answered the complaint, asserting two counterclaims against Alchera X for breach of contract and breach of the implied covenant of good faith and fair dealing ("fair dealing"). (Doc. 7.) Alchera X moved to dismiss the counterclaims, (Doc. 10), and on December 13, 2024, Hong filed an amended Answer, (Doc. 15). Hong's amended answer added Alchera as a Third-Party Defendant and asserted claims against it for breach of contract, fair dealing, unpaid wages under the Arizona Wage Act ("AWA"), unjust enrichment, fraud, negligent misrepresentation, and conversion. (Doc. 15 at 15–21.) All seven claims were brought against Alchera. (*Id.* at 11–21.) Only three claims—the fair dealing, AWA, and unjust enrichment claims—were also asserted as counterclaims against Alchera X. (*Id.* at 16–19.)

Alchera X moved to dismiss Hong's amended counterclaims for failure to state a claim, (Doc. 18), and Alchera moved to dismiss Hong's Third-Party Complaint because Hong's claims were barred by the Employment Agreements' forum selection clause, (Doc. 55). On December 23, 2025, I granted both motions. (Doc. 82.)

Specifically, I enforced the Employment Agreements' forum selection clause and dismissed the entirety of Hong's Third-Party Complaint against Alchera "without prejudice to Hong bringing these claims in the proper forum." (Doc. 82 at 9–10.) I did not grant him leave to amend his Third-Party Complaint. (*Id.*) As for his claims against Alchera X, I

dismissed Hong's fair dealing and AWA claims because Hong did not identify any contract between himself and Alchera X on which those claims could rest. (*Id.* at 4–6.) I rejected Hong's arguments that Alchera and Alchera X are so intertwined that the alter-ego theory warrants holding Alchera X responsible for Alchera's contractual obligations, explaining that the "Complaint [did] not contain sufficient factual allegations to analyze whether the entities are, in fact, one and the same or should be treated as such." (*Id.* at 7.) I also dismissed Hong's unjust enrichment claim because he did not allege that he conferred a benefit on Alchera X. (*Id.* at 7–8.) I dismissed Hong's three counterclaims against Alchera X with leave to amend and ordered him to file "any amended Answer and Counterclaim . . . no later than January 6, 2026." (*Id.* at 10.)

On January 6, 2026, Hong filed an amended Answer, Counterclaim, and Third-Party Complaint. (Doc. 83.) In the amended pleadings, Hong brought six claims against Alchera and eight claims against Alchera X. (*Id.*) Against Alchera X, Hong reasserted his unjust enrichment, AWA, and fair dealing claims (Counts 4, 7, and 8, respectively) and asserted five new claims: fraud (Count 1); conversion of ownership interest (Count 2); declaratory judgment (Count 3); civil conspiracy (Count 5); and breach of fiduciary duty (Count 6). (*Id.*) Hong also filed a First Amended Third-Party Complaint against Alchera. (*Id.*) There, he reasserted the fraud, conversion, and unjust enrichment claims I previously found barred by the forum selection clause and added three new claims (civil conspiracy, breach of fiduciary duty, and declaratory judgment). (*Id.*)

Hong did not seek leave to amend his counterclaims or third-party complaint beyond the scope authorized by the December 2025 Order, stating only that "[i]n the event a Motion for Leave to Amend is necessary, [Hong] respectfully requests the opportunity to file." (Doc. 84 at 3.)

Hong's amended pleadings raise several new factual allegations: He alleges that Alchera X was formed before his employment with Alchera began, and that, at some point, "Alchera and [Hong] decided that [he] would move to the United States and take over Alchera X." (Doc. 83 at ¶ 13.) In exchange for "this change and new duties," Hong and

Alchera agreed that he "would be the owner of Alchera X." (*Id.* at ¶ 14.) Pursuant to this agreement, Hong was awarded "8,000,000 shares in Alchera X" on August 3, 2022, which rendered him the sole shareholder and "100% owner" of Alchera X. (*Id.* at ¶¶ 15, 89, 131.) Hong also alleges that it was Alchera X—not Alchera—that agreed to transfer ownership of the company to Hong in exchange for his relocation to the United States. (*Id.* at ¶¶ 131–35.)

Unbeknownst to Hong, "Alchera and Alchera X took actions that caused [him] to forfeit his common stock" just one month later. (*Id.* at ¶ 40.) A "fraudulent resolution . . . dated September 1, 2022" represents that Alchera X's Board of Directors met in Sunnyvale, California and transferred Hong's 8,000,000 shares back to Alchera. (*Id.* at ¶¶ 40–41.) That resolution, which Hong attached to his amended pleadings, states that Hong "was present and certified" the action and includes his signature. (*Id.* at ¶ 41; *see also id.* at 32.) Hong, however, alleges that he "is able to demonstrate that [the resolution] is fraudulent because the signature does not match his . . . and he has records demonstrating he was in South Korea on September 1, 2022, not in Sunnyvale, California." (*Id.* at ¶ 42.) Hong asserts that he did not learn of the fraudulent resolution until 2024. (*Id.* at ¶ 49.)

Hong moved to Arizona sometime in 2023, under the impression that he owned Alchera X. (*Id.* at ¶ 85.) On December 5, 2023, Alchera and Alchera X told Hong that, if he resigned from Alchera X's Board of Directors, they would work to ensure he could retain his ownership interest in the company. (*Id.* at ¶¶ 27, 45.) After his resignation, however, neither company acted to ensure Hong could retain his stock. (*Id.* at ¶ 34.) Sometime in 2024, Hong learned of the September 1, 2022 resolution, which revealed that his Alchera X shares had been transferred to Alchera as of that date. (*Id.* at ¶¶ 48–49.)

On January 20, 2026, Alchera X and Alchera moved to dismiss Hong's amended Counterclaims and Third-Party Complaint. (Doc. 86.) Hong responded, (Doc. 91), and the companies replied, (Doc. 93).

## II. LEGAL STANDARD

### A. Amendment After Dismissal and After Deadline

When "leave to amend is given to cure deficiencies in certain specified claims, courts have held that new claims alleged for the first time in the amended pleading should be dismissed or stricken." *Ward v. Figure Lending LLC*, 2023 WL 8455125, at *2 (D. Ariz. Dec. 6, 2023) (quotation marks omitted); *see also Benton v. Baker Hughes,* 2013 WL 3353636, at *3 (C.D. Cal. June 30, 2013), *aff'd,* 623 F. App'x 888 (9th Cir. 2015) ("The addition of [Plaintiff's] new claims therefore exceeds the scope of the leave to amend granted, and it is appropriate to strike the newly added claims on this basis.").

A plaintiff may, however, move for leave to amend beyond the scope granted. "Generally, Federal Rule of Civil Procedure 15(a) liberally allows for amendments to pleadings." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). But when a court has entered a pretrial scheduling order that "establish[es] a timetable for amending the pleadings," a request for leave to amend is governed by Rule 16(b)(4). *Id.* Under that rule, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Thus, when a party moves to amend the pleadings after the deadline set by the scheduling order, they must show "good cause" for their delay. *Coleman*, 232 F.3d at 1294. "[T]hen, if good cause be shown, the party must demonstrate that amendment [is] proper under Rule 15." *Johnson v. Mammoth Rec., Inc.*, 975 F.2d 604, 608 (9th Cir. 1992) (quotation and citation marks omitted).

"A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under Rule 15." *Id.* at 609 (citation modified). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* If the moving party "was not diligent, the inquiry should end." *Id.*

### B. Rule 12(b)(6) – Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true" and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, legal conclusions are not accepted as true, nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" considered. *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (alteration in original) (quotation marks omitted)). That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "well-pleaded complaint may proceed even if...actual proof of those facts is improbable, and . . . a recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## III. DISCUSSION

### A. Untimely Amendment Without Leave

In my December 2025 Order, I dismissed all of Hong's claims against Alchera "without prejudice to Hong bringing these claims in the proper forum." (Doc. 82 at 10.) I did not grant Hong leave to amend his claims or to assert new claims against Alchera. (*Id.*) As for those claims brought against Alchera X, I granted Hong leave to amend only three claims: breach of the implied covenant of good faith and fair dealing, unpaid wages under the AWA, and unjust enrichment. (*Id.*) Any amendments that exceed this narrow scope are unauthorized. *See Ward*, 2023 WL 8455125 at *2; *see also Chandler v. Brennan*, 2021 WL 4503423, at *3 (D. Ariz. Oct. 1, 2021) ("It was impermissible for Plaintiff to attempt to add new . . . claims that exceeded the limited scope of leave to amend granted.").

Hong's amended pleadings go far beyond the limited leave granted by my December 2025 Order. Not only did Hong reassert three claims against Alchera that I previously dismissed due to the forum selection clause, he also asserted three new claims against Alchera and five new claims against Alchera X. Hong argues that my direction

that "any amended Answer and Counterclaim shall be filed no later than January 6, 2026" granted him leave to amend his pleadings as he saw fit. (Doc. 91 at 8.) That instruction, however, set the deadline to amend the three counterclaims he was given leave to reassert; it did not reopen the pleadings for amendments of any kind. And it certainly did not authorize Hong to file a renewed Third-Party Complaint against Alchera. This is plain from the text, which authorizes only an "amended Answer or Counterclaim." (Doc. 82 at 10.)

Because Hong's additional amendments are not authorized, and because the deadline to amend the pleadings has passed, (Doc. 36 at 8 (noting the deadline to amend the pleadings was December 30, 2024); Doc. 9 at 1), Hong's additional amendments are governed by Rule 16(b)(4). Under that rule, a party must seek leave to amend their pleadings and must show "good cause" justifying amendment. Fed. R. Civ. P. 16(b)(4). Hong's only acknowledgment of this requirement is a single sentence in his Notice of Amended Pleading that states, "[i]n the event a Motion for Leave to Amend is necessary, Plaintiff respectfully requests the opportunity to file." (Doc. 84 at 3.) Hong argues that because I have not ordered him to file a motion for leave to amend, no such motion is necessary. (Doc. 91 at 8.)

I reject this argument. Hong's request, which is, at best, an afterthought, is no substitute for the motion and "good cause" showing the rules require. It is Hong's responsibility—not mine—to determine what motions are appropriate and when to bring them.[4] A party who wishes to amend beyond a court's specific grant must move for leave to do so; it is not enough to file the expanded pleading and leave it to the court to demand a motion. *See Ward*, 2023 WL 8455125 at *2; *see Chandler*, 2021 WL 4503423 at *3.

Moreover, Hong cannot show the good cause Rule 16(b)(4) demands. Hong's new claims against Alchera and Alchera X rest on facts long known to him. Over a year ago, I considered a very similar issue: whether to grant Hong an extension of discovery deadlines

[4] Hong was represented when he filed his amended pleadings. His counsel has since withdrawn, and Hong is currently representing himself. (*See* Doc. 97.)

given his recently-alleged counterclaims and Third-Party Complaint. (Doc. 36 (the "March 2025 Order").) There, I found that the "allegations that formed the basis for Hong's counterclaims against Alchera X and third-party claims against Alchera were known to Hong, either individually or attributable to his counsel, well before this action was even initiated." (Doc. 36 at 6.) The same is true today.

Hong's new allegations and claims are based primarily on the August 3, 2022 board resolution assigning him 8,000,000 Alchera X shares and the September 1, 2022 board resolution transferring those shares back to Alchera. Hong was aware of the August 3, 2022 board resolution on its signing, and discovered the allegedly-fraudulent September 1, 2022 resolution no later than 2024. (Doc. 83 at ¶ 41, 49, 63.) His assertion that new facts emerged "through the discovery process," is unaccompanied by any account of what was learned or when, and such conclusory assertions do not establish diligence sufficient to constitute good cause. (Doc. 91 at 7–8.)

In my March 2025 Order, I warned Hong that I would "be reluctant to entertain any future requests by Hong to amend the scheduling order, especially if Hong has not done his part—and shown to the Court that he so intends—to secure the speedy and inexpensive determination of this action and proceeding." (Doc. 36 at 10 (citation modified).) Filing an unauthorized pleading laden with new claims after the amendment deadline, without seeking leave, does not reflect the diligence I called for well over a year ago. Because Hong "was not diligent," the inquiry ends. *Johnson*, 975 F.2d at 609; *see also Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1277 (9th Cir. 2023). Hong has failed to show good cause to amend the scheduling order.

Hong's claims against Alchera and his newly asserted claims against Alchera X exceed the scope of the leave granted by the December 2025 Order, and Hong has neither moved for nor shown himself entitled to the leave necessary to assert them. I will therefore strike Hong's claims against Alchera and his new claims against Alchera X, and will address the sufficiency of only those claims properly before me: Hong's amended counterclaims against Alchera X for unpaid wages under the AWA (Count 7), fair dealing

(Count 8), and unjust enrichment (Count 4).[5]

**B. Failure to State a Claim**

**1. Arizona Wage Act Claim**

The Arizona Wage Act requires employers to timely pay employees all wages they are owed. Ariz. Rev. Stat. § 23-351 (requiring employers to pay employees at least twice a month); *id.* § 23-353 (requiring employers to pay an employee "discharged from service" all wages due "within seven working days" or by the end of the pay period). The AWA defines wages as "nondiscretionary compensation due an employee in return for labor or services rendered . . . for which the employee has a reasonable expectation to be paid." *Id.* § 23-350(7). An employer who "fails to pay wages due" as outlined by the statute, may be liable for "treble the amount of the unpaid wages." *Id.* § 23-355. The AWA permits employees to recover against their employers, *id.*, and defines an employee as "any person who performs services for an employer under a contract of employment," *id.* § 23-350.

Because Hong has not identified a "contract of employment" with Alchera X, he has failed to allege that Alchera X was his "employer" under the AWA. *See id.* First, although Hong concedes that Alchera X was not a party to his Employment Agreements with Alchera, (Doc. 82 at 4), he asserts that because Alchera paid him by sending the money to Alchera X, who then disbursed the funds, Alchera X was an employer for the purposes of the AWA. But this allegation reinforces that it was Alchera—not Alchera X—who paid Hong's salary, and fails to identify a separate contract of employment with Alchera X. Hong may have sought to allege that Alchera X's conduct—administering payroll, approving expenses, and directing his day-to-day work—gave rise to an implied contract of employment. But Hong repeatedly ties his right to wages to his Employment

---

[5] Because I do not address any of Hong's claims against Alchera, or his newly raised claims against Alchera X, I do not consider his attempts to relitigate the forum selection clause issue. (Doc. 91 at 3–6.) Nor do I address his alter ego theory to the extent he intends to apply it to his claims globally. (Doc. 83 at ¶¶ 142–49; Doc. 91 at 6–8.) I granted Hong leave to amend his alter ego theory in connection with his AWA claim against Alchera X and will consider his new allegations only for that limited purpose.

Agreements with Alchera, (Doc. 83 at ¶¶ 124–26), and cites no authority for the proposition that Alchera X may be held liable for wages owed under an employment agreement to which it is not a party, based on its administrative role in his employment. (*See* Doc. 91 at 17).

Second, to the extent Hong sought to reassert his alter ego theory, he has not cured the deficiencies identified by my prior order. "To prevail on an alter-ego theory, Plaintiffs must show (1) unity of control (the formalities prong) and (2) that maintaining the corporate form would promote injustice (the fairness prong)." *Farmers Ins. Co. of Arizona v. DNS Auto Glass Shop LLC*, 2022 WL 845191, at *3 (D. Ariz. Mar. 22, 2022). As to unity of control, Hong asserts that his allegations that "the entities share common ownership and control, operate from the same management structure, comingle funds and resources, and use corporate formalities selectively and inconsistently to further their collective business interests . . . plausibly establish that the entities function as a single economic enterprise rather than as independent actors." (Doc. 91 at 7; *see also* Doc. 83 at ¶¶ 143–144.) These allegations amount to little more than a conclusory recitation of the indicia courts consider when addressing the formalities prong. *Farmers*, 2022 WL 845191 at *3. Hong's amended pleading still "does not contain sufficient factual allegations to analyze whether the entities are, in fact, one and the same or should be treated as such." (Doc. 82 at 7.)

Perhaps more importantly, Hong fails to address the fairness prong. (*See* Doc. 91 at 7.) Any injustice from unpaid wages can be remedied against Alchera, Hong's contractual employer, in the proper forum.[6] Because Hong has not adequately pled that Alchera X was his employer, directly or as Alchera's alter ego, his AWA claim will be dismissed. Given Hong's repeated failure to allege sufficient facts to support his AWA

[6] I previously noted that "Hong's ongoing litigation against Alchera in South Korea" make it difficult "to establish that 'observance of the corporate form would sanction a fraud or promote injustice.'" (*Id.* at 7 n.3 (citing *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991)).)

claim, I find any amendment would be futile and will deny further leave to amend. *In re Cloudera, Inc.*, 121 F.4th 1180, 1189–90 (9th Cir. 2024) ("[D]enying leave is not an abuse of discretion if it is clear that granting leave to amend would have been futile.").

**2. Fair Dealing Claim**

Under Arizona law, the covenant of good faith and fair dealing is implied in every contract. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (Ariz. 2002), *as amended* (Apr. 9, 2002). This implied covenant "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Id.* A party may "breach its duty of good faith without actually breaching an express covenant in the contract." *Id.* at 29. Nonetheless, whether the covenant was breached will always turn on "the contract itself." *Wagonseller v. Scottsdale Mem. Hosp.*, 710 P.2d 1025, 1040 (Ariz. 1985) *superseded by statute on other grounds, as recognized in Powell v. Washburn*, 125 P.3d 373, 380 (2006). Without a contract, a plaintiff cannot maintain a claim for breach of the covenant. *Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 960 (D. Ariz. 2020) ("A claim for breach of the duty of good faith and fair dealing requires a contractual relationship.").

Alchera X argues that Hong has not alleged a contractual relationship sufficient to support a good faith and fair dealing claim. But Hong alleges that Alchera X, through its Board of Directors, offered Hong sole ownership of the company[7] "in return for operating Alchera X in the United States and growing its business"; that Hong "accepted the offer"; that, on August 3, 2022, Alchera X's Board of Directors "cancelled its stock certificate . . . which issued 8,000,000 shares to Alchera, and then issued 8,000,000 shares of common stock" to Hong; and finally, that Hong moved to the United States and grew

[7] To the extent the amended counterclaims are inconsistent regarding whether Alchera or Alchera X made this offer, I resolve any conflict in Hong's favor. *See Sustainable Ranching Partners, Inc. v. Bering Pac. Ranches Ltd.*, 2017 WL 4805576, at *2 (N.D. Cal. Oct. 24, 2017) ("Where there are conflicts between factual statements, they must be resolved in the plaintiff's favor.").

Alchera X's business. (Doc. 83 at ¶¶ 130–41.) These allegations are sufficient to establish a contractual relationship between Alchera X and Hong.[8] *See Buckholtz v. Buckholtz*, 435 P.3d 1032, 1035 (Ariz. Ct. App. 2019) (stating that an enforceable contract requires "an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent").

Alchera X next argues that Hong's "allegations of breach are meritless" and fail to meet the heightened pleading standard required by Rule 9 of the Federal Rules of Civil Procedure. (Doc. 86 at 14.) As an initial matter, throughout its briefing, Alchera X questions the veracity of Hong's allegations. (*See e.g.*, Doc. 86 at 15 (arguing that "[m]erely stating that [Hong's] signatures appear different does not make it so," that his allegations are "unsubstantiated," and are "insufficient to prove fraud" and offering alternative versions of events to undermine his allegations).) But whether his allegations are true, or whether he will ultimately be able to marshal evidence to support them, is not before me. To the contrary, I must accept all Hong's well-pleaded allegations as true and draw reasonable inferences in his favor. *Iqbal*, 556 U.S. at 678. Accordingly, I do not consider Alchera X's arguments that Hong's allegations are unsubstantiated or meritless.

Hong has adequately alleged a fair dealing claim. At bottom, he alleges that Alchera X, after transferring 8,000,000 shares to Hong according to their agreement, re-transferred those shares back to Alchera by fraudulent resolution and without Hong's knowledge or consent, just one month later. (Doc. 83 at ¶¶ 131–39.) This is sufficient to establish that Alchera X acted in bad faith to "prevent [Hong] from receiving the benefits and entitlements of the agreement." *Wells Fargo Bank*, 38 P.3d at 28.

Hong's allegations of breach sound in fraud, so Rule 9's heightened pleading standard applies. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). Under that standard, a party must "state with particularity the circumstances constituting

---

8 Unlike his last iteration of this claim, Hong does not base his fair dealing claim on his Employment Agreements with Alchera but alleges that he entered a separate agreement with Alchera X to account for his move to the United States and certain executive services not covered by the Employment Agreements. (Doc. 91 at 15.)

fraud including the who, what, when, where and how of the misconduct charged" and "what is false or misleading about a statement." *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 53 (D. Ariz. 2021). Hong has met this standard. He alleges that Alchera and Alchera X (the who) generated a fraudulent resolution (the what), dated September 1, 2022 (the when), that purported to transfer the shares back to Alchera in full; and that the resolution contains a forged signature and represents that he was in Sunnyvale, California, when in fact he was in South Korea (the how). Although he does not provide a specific date for when Alchera X created this forged resolution, Hong states that he learned of the resolution in 2024, and the resolution itself is dated September 1, 2022. These are sufficient allegations for Alchera X to respond to Hong's allegations of fraud—and therefore breach—of the covenant of good faith and fair dealing. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056 (9th Cir. 2008) ("Rule 9(b) imposes the heightened requirement so that the fraud-action defendant can prepare an adequate answer from the allegations." (quotation marks omitted)).

**3. Unjust Enrichment**

To recover on a claim for unjust enrichment, a claimant must show "(1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment and (5) the absence of any remedy at law." *Loiselle v. Cosas Mgmt. Grp., LLC*, 228 P.3d 943, 946 (Ariz. Ct. App. 2010).

Alchera X argues that Hong has failed to allege that he conferred a "benefit" on Alchera X. I disagree. Hong alleges that Alchera X was enriched by his relocation from South Korea to the United States, his executive labor establishing Alchera X's U.S. operations, and his management of Alchera X's employees, which he provided in reliance on his ownership of the company. (Doc. 83 at ¶¶ 83–85.) He also alleges a corresponding impoverishment: he was not compensated for his services between November 2023 and February 2024, and he was stripped of the 8,000,000 shares that induced his relocation and management. (Doc. 83 at ¶¶ 87–89, 126.) In sum, Hong alleges that Alchera X retained the benefits of his work and relocation while denying him both pay and the ownership

interest that he was promised in exchange. (Doc. 83 at ¶¶ 88–90.)

Alchera X argues that these alleged benefits cannot support an unjust enrichment claim because they were contemplated by his Employment Agreements with Alchera. (Doc. 86 at 16–17.) This is less an argument that Alchera X did not benefit from Hong's relocation and services, and more an argument that Hong either (1) was adequately compensated through the Employment Agreements and thus suffered no impoverishment, or (2) has an adequate remedy at law—his contract claims against Alchera—and therefore cannot state a claim for unjust enrichment. The first version of this argument fails because it requires me to assume Hong's allegations are false and to make inferences that do not cut in his favor. To conclude Hong was adequately compensated for his services, I would have to disregard Hong's allegations that his relocation to the United States was not covered by the Employment Agreements and that he did not receive a salary from November 2023 through February 2024. Such conclusions would be improper at the motion to dismiss stage.

The second iteration of this argument—that Hong has an adequate remedy at law—fails because the existence of a legal remedy does not foreclose an unjust enrichment claim unless that remedy runs against "the same person from whom relief in equity is sought." *Loiselle*, 228 P.3d at 947 (collecting cases for the proposition that "the doctrine that equity will grant no relief when there is an adequate remedy at law is limited to cases in which there is an adequate legal remedy against the defendants that are before the court"). Any remedy available to Hong for breach of the Employment Agreements runs against Alchera, not Alchera X. Even assuming the benefits alleged were contemplated by the Employment Agreements, he may still bring an unjust enrichment claim against Alchera X, because it was not a party to those Agreements.

Alchera X does not challenge Hong's unjust enrichment claim on any other ground.[9]

---

[9] As explained in my prior order, a plaintiff may plead unjust enrichment in the alternative. (Doc. 82 at 7 (citing *Summers v. Gloor*, 368 P.3d 930, 934 (Ariz. Ct. App. 2016)).) *See also* Fed. R. Civ. P. 8(d). To the extent Hong's unjust enrichment claim seeks relief redundant to his fair dealing claim, it is permissible as alternatively pled.

(Doc. 86 at 16–17.) Accordingly, its motion to dismiss the unjust enrichment claim will be denied.

**IV. CONCLUSION**

Hong's Third-Party Complaint against Alchera, and his newly asserted claims against Alchera X, were not authorized by the December 2025 Order. Hong did not move for leave to amend his pleadings beyond the scope of the December 2025 Order, but even if he had, he cannot show good cause to amend the scheduling order under Rule 16(b)(4). His Third-Party Complaint and his new claims against Alchera X will therefore be stricken. Hong has adequately alleged his fair dealing and unjust enrichment claims against Alchera X, which may proceed.

Accordingly,

**IT IS ORDERED** granting in part the Motion to Dismiss, (Doc. 86), as follows: Hong's claims against Alchera (Counts 1–6) and his newly asserted claims against Alchera X (Counts 1, 2, 3, 5, 6) are stricken. Hong's counterclaim for unpaid wages under the AWA (Count 7) is dismissed without leave to amend.

**IT IS FURTHER ORDERED** denying in part the Motion to Dismiss, (Doc. 86), as to Hong's breach of the implied covenant of good faith and fair dealing (Count 8) and unjust enrichment (Count 4) counterclaims. These two counterclaims may proceed against Alchera X.

**IT IS FINALLY ORDERED** that Alchera X shall file an answer to the remaining counterclaims by no later than **September 8, 2026**.

Dated this 24th day of August, 2026.

Honorable Sharad H. Desai
United States District Judge